# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>v. )<br>)<br>DONNELL WARREN, )<br>)<br>Defendant. ) | Criminal No. 17-183<br><br>Judge Cathy Bissoon |

## MEMORANDUM ORDER

Pending before the Court is Defendant Donnell Warren's Motion to Suppress Evidence and Statements with Citation to Authority ("Motion to Suppress," **Doc. 58**). For the reasons that follow, the Motion to Suppress is **DENIED**.

### I. Memorandum

Defendant filed this Motion to Suppress on the grounds that all statements, evidence and fruits of evidence obtained from searches of a residence in which he was an overnight guest, a hotel room and several cell phones, violated the Fourth Amendment. Specifically, Defendant asserts the following:

- The protective sweep conducted as part of Defendant's November 2016 arrest was unlawful;

- Even if the protective sweep were lawful, that the sweep exceeded its permissible scope when law enforcement lifted up a mattress as part of the sweep;

- The consent for a search provided by the leaseholder of the residence at which Defendant was an overnight guest incident to Defendant's November 2016 arrest was not made freely and voluntarily;

- Defendant's statements following the discovery of items after this search are fruit of the violations of the Fourth Amendment and must be suppressed;

- Law enforcement's search warrant to examine a phone found during the November 2016 arrest which purported to belong to Defendant is fruit of the same violations and must be suppressed;

- The search warrant for the phone was unsupported by probable cause and was overbroad and in violation of the Fourth Amendment;

- Items seized from a consent search of a hotel room at the time of Defendant's June 2017 arrest must be suppressed; and

- The search warrant for the phones found incident to Defendant's June 2017 arrest was unsupported by probable cause and was overbroad and in violation of the Fourth Amendment.

The Government filed an Opposition to Motion to Suppress ("Gov. Opp." Doc. 60) arguing that the sweep, consent search and Mr. Warren's voluntary post-Miranda statements associated with the November 2016 arrest were valid; that the consent search incident to the June 2017 arrest was valid; and that the search warrant for all cell phones found was valid. The Court held a hearing on these issues on December 17, 2019 ("Suppression Hearing"), at which the Government called three witnesses to testify: Special Agent Michael Namey, Deputy U.S. Marshal Sean Kiley and Deputy U.S. Marshal Brandon D'Alessandro. After the hearing, the Court ordered post-hearing briefing, and Defendant filed a Post Hearing Brief in Support of Suppression ("Def. Post-Hearing Brief," Doc. 70) and the Government also filed a Post-Hearing Brief on Motion to Suppress ("Gov. Post-Hearing Brief," Doc. 69). The Court will address each of Defendant's arguments in turn.

1. **November 2016 Arrest**

The following facts are undisputed. In 2016, Mr. Warren was wanted on three outstanding arrest warrants, which had been referred to the United States Marshals Service Fugitive Task Force ("Task Force") on which Deputy Kiley and Deputy D'Alessandro served. Gov. Opp. at 1. The Task Force searched for Mr. Warren at an address in Indiana, Pennsylvania, in August 2016. Id. While they were unable to locate Mr. Warren, they found two of his associates, Mr. Frank Gardner, the resident at the Indiana, Pennsylvania address, and Mr. Eric

Beverly, Mr. Warren's brother, who was in the woods nearby. <u>Id.</u> Shortly after, in November 2016, the Task Force identified another address at which they believed Mr. Warren could be located—a trailer leased by Mr. Richard Gardner, uncle to Mr. Frank Gardner, also in Indiana, Pennsylvania (the "Fairview address"). <u>Id.</u>, Motion to Suppress ¶ 3. The Task Force also received information that Mr. Warren was actively dealing heroin in this area, and that he was often armed. Gov. Opp. at 1. At around 7:30 a.m. on November 2, Task Force officers knocked on the door of the Fairview residence. Motion to Suppress ¶¶4-5.

About five minutes elapsed between when the officers knocked and when Mr. Warren and Mr. Richard Gardner came to the door, at which point they were detained. <u>Id.</u> at ¶5. During this time, the officers heard sounds from inside the residence, which they believed, based on their experience, was consistent with multiple people moving around. Gov. Opp. at 1. After detaining both individuals, officers performed a protective sweep of the small trailer. <u>Id.</u> at 2. The officers, aware of previous occasions whereupon associates of fugitives were located hiding under mattresses or inside bed frames, lifted a mattress in one of the bedrooms as part of the sweep, discovering a 9 mm Ruger handgun. <u>Id.</u>

Outside the trailer, both Mr. Warren and Mr. Richard Gardner signed a Miranda waiver and spoke with investigators. <u>Id.</u> During this time, Mr. Gardner provided consent to search the trailer, stating that he saw Mr. Warren place something into the couch cushions. <u>Id.</u> During this search, Task Force officers found quantities of heroin, fentanyl and crack cocaine. They also found a cell phone that Mr. Gardner believed belonged to Mr. Warren. <u>Id.</u> Special Agent Namey thereafter removed the phone's battery to identify its serial number, which later was incorporated into the search warrant for the phone. Mr. Warren challenges the validity of the

protective sweep and Mr. Gardner's consent, seeking to suppress all evidence that arose from those two actions.

a. Protective Sweep and Mattress Search

The Supreme Court has found that a protective sweep of a residence incident to an arrest is proper in the following contexts: (1) "[A]s a precautionary matter and without probable cause, [police may] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched" or (2) they may search where "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 334 (2014). In this Circuit, "a sweep incident to an arrest occurring just outside the home must be analyzed under the second prong of the Buie analysis." Sharrar v. Felsing, 128 F.3d 810, 824 (3d Cir. 1997).

During the Suppression Hearing, Deputy Kiley provided several specific facts showing that a member of the Task Force could reasonably infer that the Fairview residence contained an individual who could pose a danger to those officers at the scene. See Buie, 494 U.S. at 327 (protective sweep permissible under the Fourth Amendment where "searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others…") (internal quotations and citations omitted). The Court finds several of these facts particularly persuasive. First, the Task Force had narrowly missed finding Mr. Warren at another address in the same area belonging to another member of the Gardner family, where they encountered associates of Mr. Warren, including Mr. Warren's brother, who was on federal supervised release, and who was

4

apprehended in the woods after climbing out the window, and Mr. Frank Gardner, nephew of Mr. Richard Gardner, leaseholder of the Fairview residence. Gov. Post-Hearing Brief at 2.

Second, approximately five minutes elapsed between the officers knocking and announcing themselves and Mr. Warren and Mr. Richard Gardner's arrival at the door, during which time, they heard "movement within the trailer consistent with multiple people moving around." Id. Such time would be enough for someone to conceal themselves, and given the small size of the trailer, could threaten officer safety should a concealed individual attack from within the trailer. Id. These are specific, articulable facts that provide a rational inference for a reasonable officer to believe that the area incident to the arrest could hold a dangerous individual.

Further, the Court finds that the Government provided sufficient evidence that the mattress search was not beyond the scope of the protective sweep. The testimony of Task Force officers articulating their training experiences and knowledge of individuals concealing themselves under mattresses or inside box springs is a specific, articulable fact that would lead a reasonable officer to search the mattress, especially because of the residence's small size. Gov. Post-Hearing Brief at 4-6. Defendant's arguments that law enforcement had "no information that any people other than Mr. Gardner and Mr. Warren were present inside of the trailer"; that "there were no sounds observed from inside the trailer after Mr. Warren and Mr. Gardner exited; and "there were no movements observed from inside the trailer" lack merit.[1] The first argument is

---

[1] The Court does not find the cases cited by Defendant persuasive, as they are all distinguishable. The key difference between all of these cases and the instant case are the lack of evidence evinced by the officers that could support an inference that a potentially dangerous individual hid him or herself between the time when the officers knocked and announced themselves, and when they were allowed access to the residence.

disposed of by the Task Force officers' testimony. The second and third arguments are irrelevant, as testimony during the Suppression Hearing suggested that the officers believed that the individual could have hidden him or herself in the five-minute gap before the officers entered the trailer.

---

In United States v. Mark, the defendant came down to the door within seconds, there was no evidence that the girlfriend, whom the officers testified that they believed was also in the house, was a threat (such as being a co-conspirator), and the sweep constituted multiple floors of the entire home. 2009 WL 5286598, at *3 (D.V.I. Dec. 28, 2009). There was no evidence provided that the officers knew of associates or potential co-conspirators who were commonly found with the defendant, or that the officers heard or saw any indications that someone could have hidden him or herself inside the home, especially given how quickly the defendant opened the door.

United States v. Blue is also inapposite. 78 F.3d 56 (2d Cir. 1996). Here, the defendant was sitting on the bed, compressing it, and there was no indication of any movement by others when the police entered the room. While the government suggested that the officers heard noises that could have been people moving, the court noted that the officers' surprise entry into the defendant's single-room apartment precluded the possibility that someone hid in the bed in anticipation of entry, as there was no bulge in the mattress to support an inference of a person being hidden there, especially because the defendant had been found sitting on the bed.

Finally, United States v. Rodriguez is distinguishable as well. 2019 WL 1895062 (D.N.J. Apr. 29, 2019). In this case, marshals sought a fugitive who was alleged to have been staying at the defendant's residence. When the defendant answered the door, they could see the fugitive at the top of a staircase leading to the second floor. The marshals conducted a protective sweep of the entire townhouse. Again, the facts articulated in Rodriguez differ substantially from those here. The marshals had no facts about associates or potential co-conspirators, only that the fugitive's daughter and her mother had visited the day before (which is more analogous to Mark) and most importantly, no indication that individuals had potentially concealed themselves.

In fact, the court in Rodriguez specifically distinguishes its facts from a Third Circuit case, United States v. Howard, whereupon the court found a reasonable suspicion of danger because "'Task Force members reported hearing a great deal of noise coming from upstairs, and at least one testified that he thought there were likely multiple up there from the amount of noise heard'" whereas "[n]o such noises or comparable circumstances were articulated here…[the officer] testified that he did not hear movement of any kind before entering the room…." 2019 WL 1895062, at *6, citing 729 F. App'x 181, 187 (3d Cir. 2018).

The Court finds that the protective sweep, including the search of the mattress, is valid under the standards outlined in Maryland v. Buie, and will not suppress any evidence found as part of that sweep or as a result of the sweep.

> b. Mr. Gardner's Consent

Defendant contends that Mr. Gardner's consent was not voluntary because it was "tainted by the illegal protective sweep of his trailer." Def. Post-Hearing Brief at 25 (internal quotations and citations omitted). As the Court finds that the protective sweep was within the bounds of the law, this contention lacks merit.

Defendant's second argument was that Mr. Gardner's consent was not voluntary. However, as Mr. Gardner did not testify, Defendant's arguments that Mr. Gardner's consent was involuntarily lacks support. The Court is not persuaded by Defendant's argument that Mr. Gardner's initials do not appear by the statement, "I understand that I have a right to refuse to give my consent to search and may demand that a search warrant be obtained prior to any search of the person or property described below." Gov. Opp. Ex. 2 ("Consent to Search," Doc. 60-2). Special Agent Namey testified that he reviewed each provision with Mr. Gardner, and there is no requirement that Mr. Gardner needed to initial any of these provisions.

Moreover, Mr. Gardner initialed the statement in the Consent to Search that reads, "I have read the above statement of rights, understand these rights, and hereby authorize agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives to conduct a complete search of the property described below" and signed the document. The Court does not find any evidence that supports Defendant's claim that Mr. Gardner was frightened into signing the Consent to Search. Def. Post-Hearing Brief at 8. Defendant's argument that the signature appears "shaky" cannot possibly sufficient to demonstrate that his consent was compelled. Id. While the hearing

7

testimony could suggest that Mr. Gardner may have been confused and frustrated at the presence of agents, that is not evidence that supports a finding that Mr. Gardner's consent was involuntarily given. As the Court finds no issue with Mr. Gardner's Consent to Search, it will not suppress any of the evidence found as a result of that consented search.[2]

### c. Mr. Warren's Statements

Besides finding that the protective sweep is valid, the Court also adopts the reasoning set forth by the Government with respect to the admissibility of Defendant's post-Miranda statements. As Mr. Warren does not assert that his Advice of Rights and Waiver form was invalid (Gov. Opp. Ex. 3, Doc. 60-3), his post-Miranda statements will not be suppressed.

### d. Mr. Warren's Cell Phone and Search Warrants

Defendant objects to the evidence found on his cell phone on two grounds: 1) that Mr. Gardner could not consent to seizure of a phone not belonging to him and 2) that removal of the phone's battery to obtain identifying information violated the Fourth Amendment. Def. Post-Hearing Brief at 30-31. As discussed earlier, Mr. Gardner validly consented to a search of his residence. As part of the search, Task Force officers found a cell phone on the counter that began ringing. According to Special Agent Namey's testimony, Mr. Gardner indicated that the phone was not his and that he believed it belonged to Mr. Warren. This identification was the grounds by which Special Agent Namey later sought a warrant to search the phone. In Arizona v. Hicks, cited by Defendant, the officers had no reason to suspect that the stereos themselves were evidence of a crime or contraband, and only could determine so upon moving them to locate their serial numbers. 480 U.S. 321 (1987).

---

[2] As the Court does not find that Mr. Gardner's consent was involuntary or tainted by an illegal search, it will not reach the issue of whether Defendant has standing to challenge his consent.

In contrast, the Task Force officers already had reason to believe that the phone belonged to Mr. Warren because of Mr. Gardner's statements, and did not disassemble the phone to determine its owner, but rather as a means to identify it for the purpose of obtaining a search warrant. Witness testimony and briefing by the Government demonstrates plainly that the Task Force officers had probable cause to believe that the phone would contain evidence of a crime. The Court need not speculate as to why the agent thought it necessary to note the serial number for the warrant to determine that the Task Force's seizure of the cell phone was not an unlawful, warrantless search, and was seized in the same manner that the narcotics found at the residence were seized, pursuant to Mr. Gardner's Consent to Search.

As to the warrant, the Court adopts the reasoning from the Government in its briefing. The Court finds that, exercising a deferential review of the initial probable cause determination, that the magistrate judge had a substantial basis for concluding that probable cause existed for the warrant.

**2. June 2017 Arrest**

Mr. Warren was arrested again in June 2017 on another state warrant. Gov. Opp. at 9. On the same day as his arrest, a confidential informant ("Confidential Informant" or "CI") informed investigators that Mr. Warren had stored narcotics at a hotel room rented by the CI, and at the CI's residence. Id. The Government represents that they obtained the Confidential Informant's consent to search both the hotel room and the residence, and during the search, investigators found heroin and two cell phones. Id. Mr. Warren posits that these items were seized without a warrant or an exception to the warrant requirement, and argues that they must be suppressed. Def. Motion to Suppress at ¶20. Mr. Warren also argues that the warrant

9

obtained to examine the contents of these phones, and a phone seized from Mr. Warren during his arrest, was unsupported by probable cause and was overbroad. Id. at ¶19.

    a. Confidential Informant's Consent

During the Suppression Hearing, the Government provided as an exhibit the Confidential Informant's Consent to Search. Gov. Suppression Hearing Ex. 4. Both witness testimony and the Government's briefing show that the room was paid for by the CI, under the CI's name and that the CI had access to the room through a key card in his possession. Notwithstanding Mr. Warren's unsubstantiated claims that the CI was "acting as his agent" (Def. Post-Hearing Brief at 38), the CI plainly had access to and control over the room such that the CI could consent to a search of the room. The same reasoning applies to the CI's residence. Special Agent Namey testified during the Suppression Hearing that the CI voluntarily consented to search both locations, and accompanied the officers to the hotel room and the CI's residence.[3] The Court will not suppress any evidence found as a result of the Confidential Informant's Consent to Search.

    b. Search Warrant

As stated in Section 1(d) above, the Court adopts the reasoning from the Government in its briefing. The Court finds that, exercising a deferential review of the initial probable cause determination, that the magistrate judge had a substantial basis for concluding that probable cause existed for the warrant.

---

[3] As no evidence has been provided to indicate that the CI's consent to search was involuntary, the Court will not reach the issue of Mr. Warren's standing to challenge the CI's consent.

## II. Order

Consistent with the foregoing, Defendant's Motion to Suppress is **DENIED**. The Court finds that all searches and warrants conducted or executed were pursuant to the law and will not suppress any of the evidence resulting from the challenged searches or warrants.

IT IS SO ORDERED.

January 13, 2020                              s\Cathy Bissoon
                                              Cathy Bissoon
                                              United States District Judge

cc (via ECF email notification):

All Counsel of Record